UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
NANCY COLAS,

                Plaintiff,

    -against-

CITY OF UNIVERSITY OF NEW YORK, and
KINGSBOROUGH COMMUNITY COLLEGE,

                Defendants.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-4825 (NGG) (JO)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Nancy Colas, a former assistant teacher at the Kingsborough Community College Child Development Center, brings this action under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. (the "ADA"), Section 504 of the Rehabilitation Act of 1973, 29 § U.S.C. 794a(a) ("Section 504"); the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) et seq. ("Title VII"), the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k), (the "PDA"), the New York State Human Rights Law, N.Y. Exec. Law § 290, et seq. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, et seq. ("NYCHRL"), alleging that Defendants Kingsborough Community College ("KCC") and the City University of New York ("CUNY") discriminated against her because of her pregnancy. (Am. Compl. (Dkt. 18) ¶¶ 1, 66-118.) Defendants move to dismiss the complaint for failure to state a claim. (See Defs, Mot. to Dismiss ("Defs. Mot.") (Dkt. 24)). For the reasons stated below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

1

I. **BACKGROUND**

The court takes the following statement of facts from Plaintiff's amended complaint, the well-pleaded allegations of which the court generally accepts as true for purposes of the motions to dismiss. See N.Y. Pet Welfare Ass'n v. City of New York, 850 F.3d 79, 86 (2d Cir. 2017).

Plaintiff formerly worked as an assistant teacher at the KCC Child Development Center (the "Center"), a child-care center for KCC students' children. (Am. Compl. ¶¶ 14-16.) Plaintiff's responsibilities included preparing meals for the students, assisting students to and from the restroom, cleaning the classroom space, and managing classroom activities. (Id. ¶ 17.) Plaintiff alleges that in May 2016 she informed the head teacher in her classroom, Jennifer Clapp, that she was pregnant, but did not feel comfortable talking about it, as she was only in her first trimester. (Id. ¶ 23.) Plaintiff contends that she then asked to speak with Center director Heather Brown, who speculated that the subject of the conversation was "you leaving us" and "something that will arrive in nine months." (Id.)

Plaintiff alleges that during her pregnancy and in the course of her employment at the Center, she suffered pregnancy-related medical conditions including "periodic leg muscle spasms, neck pain, fatigue and shortness of breath, episodes of cramping and contractions, ligament pain, back pain, [] joint pain, nausea and headaches." (Id. ¶ 24.) Plaintiff states that these medical complications resulted in "atypical pregnancy symptoms" including impaired functioning with her "baseline walking pattern, speed, circulation and coordination and balance." (Id.) As a result of these complications, Plaintiff alleges that she required frequent rest periods and "other reasonable accommodations due to the medical conditions related to pregnancy." (Id. ¶ 25.)

Plaintiff alleges that as her pregnancy progressed, Clapp and Brown (1) chided her for taking frequent restroom breaks such that she held her "bladder and bowel movements to the near point of self-urination or defecation, [and] to the point of intense and severe physical pain" (id. ¶ 28); (2) admonished her for sitting down during classroom hours (id. ¶¶ 31-32); (3) refused to relieve her from manual labor and/or assigned new manual labor tasks to her that she was not required to do prior to her pregnancy (id. ¶ 33); (4) did not permit her to eat breakfast in the classroom despite the fact that Defendants' similarly situated non-pregnant employees were permitted to eat in the classroom (id. ¶¶ 37-38); and (5) subjected her to "unwarranted and uninvited insulting comments, mocking behavior, and unprecedented and unwarranted informal and formal meetings regarding [her] work performance," including reproaching her for having less interaction with students (id. ¶ 39; see id. ¶¶ 39-46). As a result of this treatment, Plaintiff alleges that she had to report her "work stress" to her medical doctor and "found her body shivering and jittering throughout the day." (Id. ¶ 50).

Plaintiff alleges that she "sought to file a complaint with the Human Resources Department" but was discouraged from doing so by a coworker. (Id. ¶¶ 60-61.) Plaintiff also alleges that she complained to Brown about Clapp's unprofessional conduct but that Brown told her to take these concerns up directly with Clapp. (Id. ¶ 58.) Plaintiff claims that she was constructively terminated "on or about July 13, 2016, as a result of severe work-related stress, hostility and discrimination." (Id. ¶ 62.)

## II. PROCEDURAL HISTORY

Plaintiff filed her initial complaint with this court on August 16, 2017. (Compl. (Dkt. 1).) On March 26, 2018, Plaintiff filed an amended complaint. (Am. Compl.) On July 2, 2018, Defendants filed a motion to dismiss Plaintiff's amended complaint with Plaintiff's

3

memorandum in opposition, and Defendants reply in support of their motion to dismiss. (See Defs. Not. of Mot. to Dismiss (Dkt. 24); Pl. Mem. in Opp. ("Pl. Mem.") (Dkt. 27); Defs. Reply ("Defs. Reply") (Dkt. 28).)

## III.    LEGAL STANDARD

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007) (per curiam). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

In reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005). "[W]hatever documents may properly be considered in connection with the Rule 12(b)(6) motion, the bottom-line principle is that once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (citation and internal quotation marks omitted).[1]

---

[1] Defendants' contend that Plaintiff's usage of "upon information and belief" before nearly every factual assertion renders the complaint "insufficient as a matter of law and subject to dismissal." (Mot. at 19-20.) In this particular

4

## IV. DISCUSSION

### A. Section 504 and ADA Disability Discrimination Claims

Title I of the ADA prohibits employers from discriminating against any "qualified individual with a disability because of the disability of such individual in regard to" any aspect of employment. 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination under the ADA, a plaintiff must show: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability." Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005). Similarly, to plead a case under Section 504 "a plaintiff must allege: (1) that he or she is a person with disabilities under the Rehabilitation Act, (2) who has been denied benefits of or excluded from participating in a federally funded program or special service, (3) solely because of his or her disability." Bryant v. N.Y. State Educ. Dep't, 692 F.3d 202, 216 (2d Cir. 2012). Claims of disability discrimination pursuant to the Rehabilitation Act are analyzed under the same standards as claims brought under the ADA. Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016).

---

case, it is clear that the use of the phrase "upon information and belief" as a qualifier with respect to the pleadings is a stylistic error. As Defendants point out, Plaintiff uses the phrase "upon information and belief" prior to facts that she is undoubtedly aware of, including the date she became aware of her pregnancy and the date she received an Equal Employment Opportunity Commission ("EEOC") right to sue letter. Therefore, this court declines to dismiss Plaintiff's complaint on this basis alone. (Mot. at 19; Compl. ¶¶ 5; 23). See also Wu v. Pearson Educ., Inc., No. 09-CV-6557 (RJH), 2010 WL 3791676, at *6 (S.D.N.Y. Sept. 29, 2010) (finding that "although the number of qualifiers is at times excessive, [Plaintiff's] style of writing does not impede the reader's ability to understand the allegations made.").

Defendants move to dismiss Plaintiff's ADA and Section 504 claims on the ground that pregnancy does not constitute a disability under either the ADA or the Rehabilitation Act. (Mot. at 8-9). The ADA defines a "disability" as, inter alia, "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1). "Major life activities" include "eating, sleeping, walking, standing, lifting," and other activities. § 12102(2)(A); see 29 C.F.R. § 1630.2(i). The EEOC has stated that courts should determine whether an impairment "substantially limits" a "major life activity as compared to most people in the general population," without regard to "the ameliorative effects of mitigating measures" other than glasses or contact lenses. 29 C.F.R. § 1630.2(j)(ii), (vi). The term "substantially limits" should be "construed broadly in favor of expansive coverage" and the inquiry into this threshold issue "should not demand extensive analysis." Id. § 1630.2(j)(i), (iii).

While pregnancy alone is not considered a disability, pregnancy-related impairments may qualify as ADA disabilities if they substantially limit "a major life activity." Wadley v. Kiddie Acad. Int'l, Inc., No. 17-CV-05745, 2018 WL 3035785, at *5 (E.D. Pa. June 19, 2018). Before 2008, courts routinely held that medical conditions associated with a typical pregnancy did not qualify as a disability under the ADA. See, e.g., Serednyj v. Beverly Healthcare, LLC, 656 F.3d 540, 553 (7th Cir. 2011) (applying ADA in effect prior to the 2008 amendments to hold that "[c]ourts that consider these regulations consistently find that pregnancy, absent unusual circumstances, is not a physical impairment" (collecting cases)). See also Jeannette Cox, Pregnancy as "Disability" and the Amended Americans with Disabilities Act, 53 B.C. L. Rev. 443, 467-72 (2012) (discussing how the 2008 amendments to the ADA drastically expanded its scope, making it much easier for pregnancy-related medical conditions to qualify under its provisions); Joan C. Williams, Robin Devaux, Danielle Fuschetti, & Carolyn

Salmon, A Sip of Cool Water: Pregnancy Accommodation After the ADA Amendments Act, 32 Yale L. & Pol'y Rev. 97, 123 (2013). However, the EEOC's post-ADAAA enforcement guidelines on pregnancy discrimination makes clear that "some pregnant workers may have impairments related to their pregnancies that qualify as disabilities under the ADA, as amended." EEOC No. 915-003, Enforcement Guidance: Pregnancy Discrimination and Related Issues, 2015 WL 4162723, at *19 (June 25, 2015) ("2015 Enforcement Guidance"). In fact, "a number of pregnancy-related impairments that impose work-related restrictions will be substantially limiting, even though they are only temporary." Id. Examples include pregnancy-related anemia, sciatica, carpal tunnel syndrome, gestational diabetes, nausea sufficient to cause severe dehydration, abnormal heart rhythms, swelling, depression, and cervical insufficiency as well as post-partum related impairments. Id. at *20. Likewise, EEOC guidance establishes that "a pregnancy-related impairment that substantially limits a major life activity is a disability under the first prong of the definition" or "may constitute a 'record of' a substantially limiting impairment or may be covered under the 'regarded as' prong if it is the basis for a prohibited employment action and is not 'transitory and minor.'" 29 C.F.R. Pt. 1630, App. § 1630.2(h)(2014). "Thus, where a medical condition arises out of a pregnancy and causes an impairment separate from the symptoms associated with a healthy pregnancy, or significantly intensifies the symptoms associated with a healthy pregnancy, such medical condition may fall within the ADA's definition of a disability." Mayorga v. Alorica, Inc., No. 12-CV-21578, 2012 WL 3043021, at *5 (S.D. Fla. July 25, 2012).

Here, Plaintiff has alleged sufficient facts to state a plausible claim for relief under the ADA and Section 504 for a pregnancy-related medical complication. Defendants contend that Plaintiff fails to allege that her "pregnancy-related medical conditions" differ from those

"conditions which accompany a typical pregnancy." (Mot. at 9.) The court disagrees. Plaintiff alleges, for example, that as a result of her "leg muscle spasms, neck pain, fatigue and shortness of breath, episodes of cramping and contractions, ligament pain, back pain, along with joint pain, nausea and headaches" her "function was greatly altered, namely in her baseline walking pattern, speed, circulation and coordination of balance." (Am. Compl. ¶ 24). Plaintiff contends that such symptoms are "atypical pregnancy symptoms." (Id.). In light of the ADAAA's lenient standards to establish a disability, and the liberal pleading standards of Rule 8, the court finds that Plaintiff has alleged sufficient facts to plead that she had a disability under both the ADA and Section 504. See Nagle v. E. Greenbush Cent. Sch. Dist., No. 116-CV-00214, 2018 WL 4214362, at *16 (N.D.N.Y. Feb. 21, 2018) (finding that the plaintiff was disabled as a result of serious health issues faced by pregnancy complications). See also Varone v. Great Wolf Lodge of the Poconos, LLC, No. 3:15-CV-304, 2016 WL 1393393, at *3 (M.D. Pa. Apr. 8, 2016) (finding that allegations that the plaintiff had to "stand for long periods of time and [had] pain and cramping in her legs, along with cramping and pain throughout her stomach and chest, that she suffered anxiety and stress, and that she was limited in her ability to perform major life activities, including her ability to lift, stop, walk, turn, think, concentrate, bend, care for herself, sit and stand for long periods of time and relate to others" sufficiently set forth a claim under the ADA.) Because defendants do not move to dismiss Plaintiff's disability discrimination claim on any other basis, the court denies Defendants' motion to dismiss Plaintiff's ADA and Section 504 discrimination claims.

B.  **Failure to Accommodate Claim**

Courts apply the same standard for failure to accommodate cases under the ADA and the Rehabilitation Act. See Rodriguez v. City of New York, 197 F.3d 611, 618 (2d Cir. 1999). An

employer is liable for a failure to accommodate if: "(1) [the] plaintiff is a person with a disability under the meaning of the [applicable statute]; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." McMillan v. City of New York, 711 F.3d 120, 125-26 (2d Cir. 2013). Defendants object to Plaintiff's failure to accommodate claim on two grounds: (1) Plaintiff has failed to establish that she was disabled within the meaning of the ADA or ADAAA; and (2) Plaintiff's accommodation claim is based on "unsupported conclusory allegations." (Mot. at 10). For the reasons set for above, Plaintiff has plausibly alleged she was disabled within the meaning of the ADA or ADAAA and therefore this court will proceed to address Defendants' second ground.

Defendants contend that "[n]owhere does Plaintiff explain who she made her accommodation request to, what she was actually requesting, what, if anything, was the substance of the alleged denial of her accommodation requests, or any supporting details whatsoever, rendering such a request too vague to support a failure to accommodate claim." (Id.) However, Plaintiff alleges that she requested the following accommodations:

- The ability to more regularly take bathroom breaks (Am. Compl. ¶¶ 28-30);
- The ability to take regular sitting breaks (Id. at ¶¶ 31-32); and
- The ability to limit her role in duties that required "continuous bending and lifting resulting in burdensome physical hardship" (Id. at ¶¶ 33-36).

Plaintiff further alleges that she was explicitly denied these accommodations. For instance, Plaintiff alleges that, as a result of the physical hardship, she "complained to Defendant to no avail." (Id. ¶ at 33). Plaintiff also states that she requested not to stoop or squat in the classroom

to assist students but that such accommodation requests were denied. (Id. ¶ at 34). Finally, Plaintiff alleges that "she informed Director Brown that she is performing her job duties, however required several accommodations in order to offset any burdens or challenges resulting from her pregnancy and [its] complications." (Id. ¶ at 56). These allegations are sufficient to plead that Plaintiff sought accommodations.

As Defendants point out, it is generally the "responsibility of the individual with a disability to inform the employer that an accommodation is needed." Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006) (citations omitted). However, that rule does not apply where "the disability is obvious," such that "the employer knew or reasonably should have known that the employee was disabled." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 135 (2d Cir. 2008). In such instances, employers are expected to engage in "an interactive process [with their employees and in that way] work together to assess whether an employee's disability can be reasonably accommodated." Id. (citation omitted) (alteration in original). Here, there is no doubt that Defendants were aware of Plaintiff's pregnancy, and therefore Defendants' motion to dismiss Plaintiff's failure to accommodate claim on a lack of notice ground is denied. See e.g., Peterson v. Pan Am Sys., Inc., No. 12-CV-1857, 2013 WL 4588846 at *4 n.11 (N.D.N.Y. Aug. 28, 2013) ("This obviousness might well be found given Plaintiff's allegations that he communicated with Defendants regarding the severity of his injury and his work limitations.")

### C. Hostile Work Environment Claim

Plaintiff contends that Defendants subjected her to a hostile work environment because of her pregnancy. For the reasons discussed below, the court grants Defendants' motion to dismiss Plaintiff's hostile work environment claim.

In order to establish a hostile work environment under Title VII, a plaintiff must allege "conduct (1) that is 'objectively' severe or pervasive—that is, it creates an environment that a reasonable person would find hostile or abusive (the 'objective requirement'), (2) that the plaintiff subjectively perceives as hostile or abusive (the 'subjective requirement'), and (3) that creates such an environment because of plaintiff's sex (or other characteristic protected by Title VII) (the 'prohibited causal factor requirement')." Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001) (alterations in original) (internal quotations marks and citations omitted).

With respect to the objective requirement, the plaintiff must show that the defendant's conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." Id. "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014) (internal quotation marks and citation omitted). To determine whether an incident or series of incidents are severe or pervasive, "courts must assess the totality of the circumstances, considering elements such as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (quoting Harris, 510 U.S. at 23). Allegations of isolated incidents of discriminatory comments or conduct generally do not suffice. See Williams v. N.Y.C. Dep't of Sanitation, No. 00-CV-7371 (AJP), 2001 WL 1154627, at *13 (Sept. 28, 2001) (collecting cases). Still, "even a single

11

incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability." Tomka v. Seiler Corp., 66 F.3d 1295, 1305 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998).

Here, Defendants contend that Plaintiff's allegations "amount to dissatisfaction with her supervisors, . . . personality conflicts with Ms. Clapp, and general workplace grievances" and, therefore, that Plaintiff fails to allege a hostile work environment. (Mot. at 15.) Plaintiff alleges that upon learning of her pregnancy, her employer's "attitude completely changed" and she became the subject of "increased, unwarranted and uninvited insulting comments, mocking behavior, and unprecedented and unwarranted informal and formal meetings regarding Plaintiff's work performance." (Am. Compl. ¶ 39). Plaintiff further alleges that she would frequently "hear Ms. Clapp negatively discussing Plaintiff's pregnancy and her work performance to other co-workers." (Id. ¶ 45). As a result of Plaintiff's work environment, she allegedly expressed her work stress to her medical provider and her body would "shiver[] and jitter[] throughout the day." (Id. ¶ 50). Plaintiff also alleges that she suffered from "severe nose bleed[s]" and "no longer [had] an appetite." (Id. ¶¶ 53; 50).

While this court finds that Plaintiff's allegations, taken as true, amount to far more than "general workplace grievances," (Mot. at 15) they do not rise to the high burden of alleging a hostile work environment. See Peralta v. Roros 940, Inc., 72 F. Supp. 3d 385, 395 (E.D.N.Y. 2014) ("In claiming a hostile work environment, plaintiff reasserts the facts underlying her discriminatory termination claim—in short, episodes of name-calling (heard secondhand), undue reprimands, perceived animosity, and unwelcome work assignments. This alleged pattern of behavior, while perhaps indicative of discriminatory animus, does not exhibit the severity or

pervasiveness of an actionable hostile work environment."). Therefore, Defendants' motion to dismiss Plaintiff's hostile work environment claim is granted.

### D. Constructive Discharge Claim

"Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 73 (2d Cir. 2000) (internal quotation marks and citation omitted). "[A] constructive discharge cannot be proven merely by evidence that an employee disagreed with the employer's criticisms of the quality of [her] work, or did not receive a raise, or preferred not to continue working for that employer. Nor is the test merely whether the employee's working conditions were difficult or unpleasant." Spence v. Md. Cas. Co., 995 F.2d 1147, 1156 (2d Cir. 1993) (citations omitted). Rather, a "plaintiff may prove a constructive discharge by establishing that [her] 'employer, rather than acting directly, deliberately made [her] working conditions so intolerable that [s]he was forced into an involuntary resignation,' i.e., 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" Kirsch v. Fleet St., Ltd., 148 F.3d 149, (2d Cir. 1998) (quoting Pena v. Brattleboro Retreat, 702 F.2d 322, 325 (2d Cir. 1983) (alteration omitted)).

As the bar for constructive discharge claims is higher than that for hostile work environment, "pleadings that fail to pass muster under the less rigorous standard must also be found inadequate under the more demanding." Pryor v. Jaffe & Asher, LLP, 992 F. Supp. 2d 252, 262 (S.D.N.Y. 2014). Therefore, the court's dismissal of Plaintiff's hostile work environment claim necessitates the dismissal of Plaintiff's constructive discharge claim. See Swiderski v. Urban Outfitters, Inc., No. 14-CV-6307 (JPO), 2017 WL 6502221, at *13 (S.D.N.Y. Dec. 18, 2017)

(noting that the standard for constructive discharge "is even more demanding than that required to prevail on a hostile environment claim"). See also Trinidad v. N.Y. Dep't of Corr., 423 F. Supp. 2d 151 (S.D.N.Y. 2006) ("[C]reation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case [under Title VII]"(citation omitted)); Ternullo v. Reno, 8 F. Supp. 2d 186, 192 (N.D.N.Y. 1998) ("[T]his Court has held that to demonstrate constructive discharge, the plaintiff must demonstrate harassment that is more severe and pervasive than that required to show a hostile work environment.").

Accordingly, Plaintiff's constructive discharge claim is dismissed.

### E. Title VII and Pregnancy Discrimination Claims

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); see also id. § 2000e-2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."). The PDA amended Title VII to provide that discrimination "because of" an individual's sex includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions," and that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes." Id. § 2000e(k).

Pregnancy discrimination claims brought under Title VII are analyzed pursuant to the three-step, burden-shifting framework first set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Kerzer v. Kingly Mfg., 156 F.3d 396, 400-01 (2d Cir. 1998). "Under this framework, the plaintiff first must establish, by a preponderance of the evidence, a prima facie

case of discrimination." Id. at 401. "A plaintiff can establish a prima facie case of pregnancy discrimination under Title VII by showing that: (1) she belongs to a protected class; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination." Walsh v. N.Y.C. Hous. Auth, 828 F.3d 70, 75 (2d Cir. 2016) (analyzing gender discrimination claims brought pursuant to Title VII and the NYSHRL under McDonnell Douglas) (citation omitted).

Defendants argue that Plaintiff cannot establish the third element of her prima facie PDA and Title VII discrimination claims: failure to plead an adverse employment action. (Mot. at 12.) To prove that her "employer took adverse action", a plaintiff must show there was "a materially adverse change in the terms and conditions of employment." Galabaya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). "Examples of materially adverse changes include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'" Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003) (quoting Galabya, 202 F.3d at 640).

The court finds that Plaintiff has failed to plausibly allege an adverse employment action. Plaintiff alleges that upon informing Defendants of her pregnancy, her employer made unwelcome comments and changed her attitude toward Plaintiff, creating an environment so severely "hostil[e] and discriminat[ory]" that "Plaintiff was constructively terminated from her position." (Am. Compl. ¶ 62). Although a constructive discharge is "functionally the same as an actual termination" and is therefore considered an adverse employment action, for the reasons set forth above, Plaintiff has failed to allege a constructive discharge claim. Pa. State Police v. Suders, 542 U.S. 129, 148 (2004); see also Fitzgerald v. Henderson, 251 F.3d 345, 357 (2d Cir.

15

2001) ("Adverse employment actions include discharge from employment. Such a discharge may be either an actual termination of the plaintiff's employment by the employer or a 'constructive' discharge."); Trachtenberg v. Dep't of Educ. of N.Y.C., 937 F. Supp. 2d 460, 468 (S.D.N.Y. 2013) ("[A] 'constructive discharge' from employment does constitute an adverse employment action."). Therefore, Defendants motion to dismiss Plaintiff's Title VII and PDA discrimination claims is granted.

### F. Title VII Retaliation Claim

To establish a prima facie case of unlawful retaliation, a plaintiff must show "(1) participation in a protected activity; (2) the defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 844 (2d Cir. 2013). (internal quotation marks and citation omitted). If the employer puts forward a non-retaliatory reason for the employment action, the plaintiff must then put forward evidence that the non-retaliatory reason is a mere pretext for retaliation. See id. at 845. Ultimately, a plaintiff asserting a Title VII retaliation claim must show that retaliation was a "but-for" cause for the adverse employment action. See Univ. of Tex. SW. Med. Ctr. v. Nassar, 570 U.S. 338, 362 (2013).

Defendants contend that Plaintiff's retaliation claim fails because she has not alleged that she engaged in any protected activity. (Mot. at 18.) Under Title VII, protected activity includes both "opposing discrimination proscribed by the statute and . . . participating in Title VII proceedings." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). Title VII's antiretaliation provision is "construed to cover a broad range of employer conduct." Thompson v. N. Am. Stainless, LP, 562 U.S. 170, 172 (2011). The conduct need not be prohibited by Title

16

VII so long as plaintiff had a good faith belief that such conduct was prohibited. See La Grande v. DeCrescente Distrib. Co., 370 F. App'x 206, 212 (2d Cir. 2010) ("It is well-established that a 'plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.'" (quoting Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002))); Dall v. St. Catherine of Siena Med. Ctr., 966 F. Supp. 2d 167, 192-93 (E.D.N.Y. 2013) (plaintiff need only have a "good faith belief" that employer conduct was prohibited); Kanhoye v. Altana Inc., 686 F. Supp. 2d 199, 206 (E.D.N.Y. 2009) ("'An employee is privileged to report and protest workplace discrimination, whether that discrimination be actual or reasonably perceived.'" (quoting Matima v. Celli, 228 F.3d 68, 78 (2d Cir. 2000))).

For a complaint to qualify as protected activity, an employee does not need to lodge a formal complaint of discrimination. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000) ("While the law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection, this notion of 'opposition' includes activities such as 'making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges.'" (quoting Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990))); Bennett v. Hofstra Univ., 842 F. Supp. 2d 489, 500 (E.D.N.Y. 2012) (noting that Title VII does not require a formal complaint); Martin v. State Univ. of N.Y.,704 F. Supp. 2d 202, 227 (E.D.N.Y. 2010) ("It is clearly established that 'informal complaints to supervisors constitute protected activity under Title VII.'" (citations omitted)).

However, while such complaints may be informal, they cannot be so vague or "generalized" that the employer could not "reasonably have understood [ ] that the plaintiff's complaint was directed at conduct prohibited by Title VII." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 108 (2d Cir. 2011) (alteration and citation omitted); Brummell v. Webster Central School Dist., No. 06-CV-6437, 2009 WL 232789, at *6 (W.D.N.Y. Jan. 29, 2009)) ("When making the complaint, Plaintiff must do so in "sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against on the basis of [the protected status].")

Plaintiff alleges that in a meeting with Director Brown she told Brown that Ms. Clapp "smoke[d] an electric cigarette in the classroom; [had] inappropriate conversations around the children; [ate] in the classroom; [took] frequent breaks and exits the classroom; and [] frequently talk[ed] about her Tinder account during classroom time." (Compl. ¶ 57.) However, as Defendants point out, none of these complaints pertain or relate to unlawful discrimination. Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 292 (2d Cir. 1998) (plaintiff's "generalized" complaints were not protected activity where employer "could not reasonably have understood that she was complaining of 'conduct prohibited by Title VII'" (citation omitted)). Moreover, Plaintiff herself explains that she did not speak to Human Resources because she feared it "would only make the situation even more worse and difficult." (Compl. ¶ 61.) Plaintiff's allegation that "shortly after complaining to Defendant of discriminatory treatment" Plaintiff was "subject to further discrimination and harassment, namely by way of a series of adverse actions that altered the terms and conditions of her employment leading to Plaintiff's constructive termination" (Am. Compl. ¶ 99) is conclusory and does not sufficiently plead that

18

she engaged in any form of protected activity. See Iqbal, 556 U.S. at 678. Accordingly, Plaintiff's Title VII retaliation claim is hereby dismissed.

G.     NYSHRL & NYCHRL Compliance with New York Education Law § 6224

The only argument Defendants raise with regard to Plaintiff's NYSHRL and NYCHRL claims is that they are barred for failure to file a timely notice of claim pursuant to New York Education Law § 6224(1). (Mot. at 20.) State notice of claim requirements apply to state claims brought in federal court. DeCarolis v. Town of Vienna, 322 F. App'x 25, 26 (2d Cir. 2009). However, for the reasons set forth below, the court finds that § 6224(1) does not apply to the matter at hand.

Section 6224(1) incorporates the notice of claim requirements of General Municipal Law §§ 50-e and 50-i. Section 50-e "provides the procedural mechanism for filing a notice of claim when required," and § 50-i "sets forth the kinds of actions which will trigger the requirement to provide a municipality with a notice of claim." Mills v. Monroe County, 453 N.Y.S.2d 486, 487 (N.Y. App. Div. 1982). Section 50–e states that "in any case founded upon tort" against a public corporation, or any of its officers, appointees, or employees, a plaintiff must serve a notice of claim on the public corporation within 90 days after the claim arises. Section 50-i provides that the tort actions that trigger the notice of claim requirement are actions for "personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of . . . negligence or wrongful act." The New York Court of Appeals has held that "[h]uman rights claims are not tort actions under section 50-e and are not personal injury, wrongful death, or damage to personal property claims under section 50-i," so that "a notice of claim need not be filed for a Human Rights Law claim against a municipality." Margerum v. City of Buffalo, 28 N.E. 3d 515, 516, 518 (2015). The court further stated that it "[did] not perceive any reason to

encumber the filing of discrimination claims." Id. at 519. See also Keles v. Yearwood, 254 F. Supp. 3d 466, 471 (E.D.N.Y. 2017) (analyzing the plain language of New York Education Law § 6224(1) and finding that it establishes that its notice of claim requirement applies to torts alone.) Accordingly, Defendants' motion to dismiss Plaintiff's NYSHRL and NYCHRL claims is denied.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. The motion is granted with respect to the following claims, which are dismissed:

- Plaintiff's Title VII and PDA discrimination claims;
- Plaintiff's constructive discharge claim;
- Plaintiff's Title VII hostile work environment claim; and
- Plaintiff's Title VII retaliation claim.

The motion is denied with respect to the following claims:

- Plaintiff's ADA and Section 504 of the Rehabilitation Act discrimination claims;
- Plaintiff's ADA failure to accommodate claim; and
- Plaintiff's NYSHRL and NYCHRL claims.

SO ORDERED.

Dated: Brooklyn, New York
May 7, 2019

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge